1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>GREGORY CURT BYIAS, JR.,<br>  a/k/a "Gregory Curt Byias,"<br>  a/k/a "Greg Byias,"<br>  a/k/a "Gregory Curt Bylas,"<br>  a/k/a "GB,"<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. CR-10-00018 PJH<br><br>[PROPOSED] ORDER DETAINING DEFENDANT PENDING TRIAL AND EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT<br><br>Trial Date:   August 8, 2010<br>Time:          8:30 a.m.<br>Court:         Hon. Phyllis J. Hamilton |

I.  DETENTION ORDER

Defendant Gregory Curt Byias Jr. is charged in a two-count indictment.  The indictment charges offenses that each subject Defendant to maximum sentences of at least ten years under the Controlled Substance Act.

A.      **Initial Detention Hearing**

On January 20, 2010, the United States moved for Defendant's detention pursuant to 18 U.S.C. 3142(f)(1)(C) (because the crime involved a Title 21 offense for which the maximum sentence is 10 years' imprisonment or more) and (f)(1)(D) (because the instant offense is a

felony and defendant has two or more convictions for a crime set forth §§ 3142(f)(1)(A)-(C) or for an offense under state or local law that would qualify under §§ 3142(f)(1)(A)-(C) if federal jurisdiction were present, or a combination or such offenses and (f)(2)(A) (because there is a serious risk defendant will flee), and subsequently asked for a detention hearing in three days, as permitted by section 3142(f).  Following a hearing under 18 U.S.C. § 3142(f), and considering the parties' proffer, the bail study (that recommended the Defendant's detention), and the factors set forth in section 3142(g), the Court found by clear and convincing evidence that Defendant is a danger to the community and a preponderance of the evidence that he is a serious risk of flight and that no condition or combination of conditions in section 3142(c) would reasonably assure his appearance in this case or the safety of any other person or the community.  See 18 U.S.C. § 3142(e) and (f); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

In response to the United States' proffer, the Court then asked Defendant if he intended to proceed with a proffer.  Defendant's counsel indicated that Defendant intended to submit to detention with the understanding that he was reserving his rights under the Bail Reform Act to contest detention at a later date.  Defendant did not request a full bail study at this time, such as an interview by Pretrial Services.  See 18 U.S.C. § 3142(f) (a defendant has the right at a section 3142(f) hearing to, with the assistance of counsel, testify, present witnesses, cross-examine adverse witnesses, and present information by proffer or otherwise).  In turn, the Court continued the matter for a further detention hearing.

### B.    Subsequent Detention Hearing

On May 11, 2010, at the Defendant's request, the parties appeared for a further detention hearing.  The United States again moved for the Defendant's detention pursuant to same grounds, in addition to § 3142(f)(2)(A) (because there is a serious risk defendant will flee).  Following a hearing under 18 U.S.C. § 3142(f), and considering the parties' proffer, the bail study (that continued to recommend the Defendant's detention), and the factors set forth in section 3142(g), the Court found that the Defendant failed to rebut the presumptions and further found by clear and convincing evidence that the Defendant is a danger to the community and a preponderance of the evidence that he is a serious risk of flight and that no condition or

1   combination of conditions in section 3142(c) would reasonably assure his appearance in this case

2   or the safety of any other person or the community.  See 18 U.S.C. § 3142(e) and (f); Motamedi,

3   767 F.2d at 1406.  The Court continued the matter for trial on August 8, 2010 at 8:30 a.m. before

4   the Hon. Phyllis J. Hamilton.

5       Consistent with its previous proffer as to the charged offenses, the United States

6   proffered that there was overwhelming evidence that Defendant committed each of the charged

7   offenses.  In doing so, the United States re-summarized the investigation stating that there was

8   overwhelming evidence that Defendant committed each of the charged offenses.  In doing so, the

9   United States summarized the investigative record for each offense, which included a controlled

10  purchase of crack cocaine made from Defendant by a confidential informant posing as a

11  narcotics buyer.  Prior to the controlled purchase, the confidential informant met with law

12  enforcement to arrange for the sale of the narcotics.  Before the confidential informant departed

13  to meet Defendant, law enforcement searched the confidential informant's person to confirm

14  there was no contraband or currency in his/her possession.  Law enforcement also installed a

15  hidden audio/video recording device on the confidential informant's person and provided

16  him/her with money to purchase the narcotics.   In turn, law enforcement then watched the

17  confidential informant travel to the front door of the residence where the buy was to take place.

18  After meeting with Defendant, the confidential informant returned to meet with law enforcement

19  and provided narcotics to the officers.  Law enforcement searched the confidential informant and

20  confirmed that he/she was no longer in possession of the previously provided currency or

21  additional contraband.  Additionally, law enforcement confirmed that Defendant sold the

22  narcotics within 1,000 feet of a prohibited place.

23      A review of the hidden audio/video recording device shows the confidential informant

24  walk into an open residential garage.  Once inside, the confidential informant meets with a

25  person clearly depicted as Defendant and then negotiates the sale of crack with Defendant.

26  During the video Defendant holds up his driver's license and tells the confidential informant that

27  it is his birthday.

28      Defendant's criminal history, as proffered by the United States, continued to further

[PROPOSED] ORDER RE: DETENTION AND TIME EXCLUSION
CR-10-00017 PJH (LB)            3

1    support the Court's initial conclusion.  Defendant's criminal history includes numerous firearms

2    and narcotics-related offenses:  (1) a 1988 juvenile disposition for possession of a controlled

3    substance in violation of California Health & Safety Code § 11350; (2) a 1989 juvenile

4    disposition for transportation of a controlled substance in violation of California Health & Safety

5    Code § 11352; (3) a 1990 juvenile disposition for assault with a firearm on a person in violation

6    of California Penal Code § 245; (4) a juvenile disposition for possession of a dangerous weapon,

7    receiving stolen property, and possession of cocaine base for sale; (5) a 1992 felony conviction

8    for second degree robbery where Defendant was sentenced to 2 years in prison; (6) a 1994 felony

9    conviction for shooting into an inhabited dwelling and possession of a firearm in violation of

10   California Penal Code §§ 246 and 12021 where Defendant was sentenced to 10 years in prison;

11   (7) a 2001 felony conviction for possession of cocaine base for sale in violation of California

12   Health & Safety Code § 11351.5 where Defendant was sentenced to 6 years of prison.

13        The United States further proffered specific instances of the Defendant's prior criminal

14   conduct.  At the outset, the United States cited to the Defendant's January 19, 2010 arrest in this

15   case.  On that date, law enforcement arrested the Defendant with $1,844 in cash along with an

16   additional 73 individually wrapped rocks of suspected crack cocaine that was later confirmed to

17   be 11.3 grams of cocaine base.

18        The United States also cited the Defendant's 1991 arrest for murder and a 1993 incident

19   where the Defendant was a suspect in another murder by virtue of the fact that the murder

20   weapon had ballistics that were consistent with three other shootings, including the 1994

21   shooting where the Defendant pleaded guilty to felonies for shooting into an inhabited dwelling

22   and for possession of a firearm as a felon.

23        In elaborating on the Defendant's above-referenced 1994 felony conviction for shooting

24   into an inhabited dwelling, the United States proffered that the Defendant fired multiple times at

25   the victim's car with a 9 millimeter "Uzi-style" pistol during an argument over the victim's debt.

26   As the victim fled, one of the bullets passed through the driver-side and passenger-side seats and

27   lodged against the car's seat belt assembly.  Following the shooting, officers found seven spent 9

28   millimeter shell casings at the shooting location.  This shooting occurred in May 1993.

[PROPOSED] ORDER RE: DETENTION AND TIME EXCLUSION
CR-10-00017 PJH (LB)                              4

The Defendant remained wanted until his July 1994 firearms-related arrest.  At that time, the Richmond Police Department ("RPD") arrested the Defendant after he fled from a moving vehicle in possession of a loaded .44 caliber revolver during an attempted traffic stop.  After a brief foot chase, officers arrested the Defendant at gunpoint and found additional ammunition in the Defendant's pockets.  According to the driver of the car, the Defendant told her not to pull over.

The United States also elaborated on the Defendant's above-referenced 2001 felony conviction for possession of cocaine base for sale.  In that case, RPD arrested the Defendant during a June 2001 residential parole search.  During the search, officers found 242 grams of cocaine in a brown bag hidden under a mattress, $2,063 in cash, a bulletproof vest, plastic baggies, a police scanner, a pistol holster, and ammunition.  According to a witness, as the police entered the residence the Defendant fled from his room carrying something brown in his hand.

The Defendant's next relevant contact with law enforcement following his release from prison was in February 2008.  At that time, RPD arrested the Defendant after observing shots fired from a white van driven by the Defendant.  As officers stopped the van a second suspect fled on foot from the van door.  That suspect was later apprehended after an officer-involved shooting.  Law enforcement subsequently found a .40 caliber pistol along the suspect's path of flight in addition to multiple spent .40 caliber shell casings at the scene of the original shooting.

Next, in 2009, RPD arrested the Defendant after observing him loitering in a high drug trafficking area.  As officers approached, the Defendant walked away and squatted between two parked cars.  During an ensuing pat-down search, officers felt a baggy of suspected crack cocaine between the Defendant's buttocks.  Because of the public setting there was no place to do a strip search so the officers transported the Defendant to the station.  While enroute to the station, the Defendant refused to sit still and continuously shifted around in his seat.  Upon arrival at the station, the officers could not find the crack cocaine on his person, however, officers did not conduct a body cavity search.

These facts, along with the strength of the evidence in this case, establish that Defendant is a danger to the community and flight risk.

[PROPOSED] ORDER RE: DETENTION AND TIME EXCLUSION

## II.  SPEEDY TRIAL ACT

At the hearing, at the request of the government and with the agreement of defense counsel, the Court excluded time under the Speedy Trial Act, 18 U.S.C. § 3161, from May 11, 2010, to August 8, 2010, to enable the defense to review discovery produced by the United States and to prepare for trial.  The Court found that (A) failure to grant the requested continuance would unreasonably deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and (B) the ends of justice served by excluding the period from May 11, 2010, to August 8, 2010, outweigh the best interest of the public and the defendant in a speedy trial.  18 U.S.C. §§ 3161(h)(7)(A) and (B)(iv).

## III.  CONCLUSION

Time is excluded under the Speedy Trial Act between May 11, 2010 and August 8, 2010. The Court detains Defendant as a danger to the community and as a serious flight risk.  The Court is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  See 18 U.S.C. § 3142(i)(2).  The Defendant must be afforded a reasonable opportunity to consult privately with counsel.  See id. § 3142(i)(3).  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.  See id. § 3142(i)(4).

IT IS SO ORDERED

DATED: May 18, 2010

LAUREL BEELER
United States Magistrate Judge

[PROPOSED] ORDER RE: DETENTION AND TIME EXCLUSION
CR-10-00017 PJH (LB)                                          6